## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| KLAUSNER TECHNOLOGIES, INC.,<br>a New York Corporation | § <br> § <br> § | |
| **Plaintiff** | § <br> § | **CIVIL ACTION NO. 2:06cv275** |
| vs. | § <br> § | |
| VONAGE HOLDINGS CORP,<br>a Delaware Corporation, VONAGE<br>AMERICA, INC., a Delaware<br>Corporation | § <br> § <br> § <br> § | |
| **Defendant** | § <br> § <br> § | |

### MEMORANDUM OPINION AND ORDER

This claim construction opinion construes terms in U.S. Patent No. 5, 572, 576 ("the '576 patent"). Plaintiff Klausner Technologies, Inc. ("Klausner") accuses Defendants Vonage Holdings Corp. and Vonage America, Inc. (collectively "Vonage") of infringing Claims 3 and 4[1] of this patent.

### The Patent

The '576 patent describes, and the asserted claims 3 and 4 recite, a method of automatically answering incoming telephone calls and storing and retrieving information from the incoming telephone calls. The method utilizes a telephone answering device that includes a memory and is coupled to a telephone. The method involves, in general terms, receiving signals that specify a caller and receiving a voice message from the caller. The voice message is stored in the memory of the telephone answering device, and the signals specifying the caller are linked to the voice message. The signals specifying the caller, having been linked to the voice message, may be transmitted to a

---

[1]Claim 4 depends from Claim 3 and, therefore, the terms construed below apply to Claim 4 as well.

"user remote access device" and may assist in the selective retrieval of the stored voice message. When a voice message is selected, it is transmitted to the "user remote access device." The described method allows a user to select which voice messages he or she is interested in retrieving and provides for the playback of the selected voice message(s).

## Applicable Law

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the scope of the patented invention. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id.* Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim

2

does not include the limitation. *Id.* at 1314-15.

Claims "must be read in view of the specification, of which they are a part." *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow certain claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* Also, the specification may resolve any ambiguity in the meaning of claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commcns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc. v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand

3

the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## The Terms

The terms at issue are:[2] "automatically answering incoming telephone calls,"[3] "telephone answering device," "coupled to a telephone," "first signals," "corresponding voice message," "user remote access device," "transmitting said received first signals to a user remote access device," and "transmitting to a user remote access device at least one specific voice message linked to a specific one of said received first signals."

1.    "automatically answering incoming telephone calls"

Klausner believes this term need not be construed while Vonage contends that this term should be construed to mean "sensing an incoming ring signal on the called party's telephone line and putting the called party's telephone line in an off-hook state." To support its contention, Vonage primarily relies upon Figures 3A and 3B and the corresponding text in the specification, arguing that these figures "illustrate" the "answer mode of the present invention" and not merely an embodiment

---

[2]At the *Markman* hearing, the parties agreed that the term "each incoming call" need not be construed.

[3]The parties appear to agree that although "automatically answering incoming telephone calls," "telephone answering device," and "coupled to a telephone" are contained in the preamble to Claim 3, these terms are limiting and amenable to construction.

of the invention. *See* Col. 3:27-28; Col. 6:10-11. Vonage also contends, essentially, that because the specification describes a single way of "answering incoming telephone calls," the term should be limited to that embodiment. In response, Klausner asserts that Vonage is improperly limiting the phrase to a specific embodiment. The Court agrees with Klausner.

It is important to remember that although the specification often describes very specific embodiments of the invention, the Federal Circuit has cautioned against confining the claims to those embodiments. *See Phillips*, 415 F.3d at 1323. The roles of the specification are to "teach and enable those of skill in the art how to make and use the invention and to provide a best mode for doing so. One of the best ways to teach a person of ordinary skill how to make and use the invention is to provide an example of how to practice the invention in a particular case." *Id.* "'[T]he claims of the patent, not its specifications, measure the invention.'" *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) (citation omitted). "Accordingly, particular embodiments appearing in the written description will not be used to limit claim language that has broader effect. And, even where a patent describes only a single embodiment, claims will not be 'restrictively unless the patentee has demonstrated a clear intention to limit the claim scope 'using words or expressions of manifest exclusion or restriction.'" *Id.* at 1117 (citations omitted).

Vonage argues that, where the patent specification makes clear that what is described is "the invention" rather than simply "an embodiment" of the invention, the claims may be limited to that description. It is true that where a patent clearly indicates that the description is that of "the invention" and not simply "an embodiment," that indication should be taken into account in construing the claim terms at issue. However, as is discussed below, in this particular case, the patent specification is not so clear as to be directing its description, in any aspect, to "the invention"

5

as opposed to an embodiment of the invention.

The Court begins, as it must, with the words of the claim. *See Teleflex*, 299 F.3d at 1324; *see also CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("The terms used in the claims bear a presumption that they mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art."). Vonage does not rely on the language of Claim 3 to support its contention. Indeed, Claim 3 cannot be read to define the term as Vonage suggests. Claim 3 simply requires a "method of automatically answering incoming telephone calls and storing and retrieving information from the incoming telephone calls." While not determinative, Klausner presents evidence, which Vonage does not meaningfully dispute, that one skilled in the art would understand "automatically answering telephone calls" as answering telephone calls without human intervention and not limited in the fashion Vonage proposes. *See* Ex. 25 to Pl.'s Claim Const. Br. ¶¶ 26-28.

Vonage argues that Figures 3A, 3B, 4 and 5 are described as "illustrating [various features] of the present invention." According to Vonage, this language clearly indicates that what is shown in these Figures represents the invention itself and is not simply illustrative of an embodiment of the invention. The Figures are first discussed in the section titled "Brief Description of the Drawings." This section begins with the statement that the "above and other objects and advantages will become apparent to those skilled in the art upon reviewing the detailed description of the preferred embodiments in conjunction with a review of the appended drawings. . ." *See* Col. 3:18-21. These drawings are then further discussed in the section titled "Detailed Description of the Preferred Embodiments." This section concludes with the statement that "[w]hile the embodiments shown and described are fully capable of achieving the objects of the invention, it is to be understood that these

embodiments are shown only for the purpose of illustration and not for the purpose of limitation."
Col. 12:61-64.

At several points in the discussion of Figures 3A and 3B, the figures are described as "preferably" containing certain characteristics. *See, e.g.*, Col. 6:30-31 ("The microcontroller then preferably multiplies this number by 6 . . ."); Col. 6:44-45 ("The OGM is preferably stored as message #1 in memory 2."); Col. 6:48-49 ("When the playing of the OGM is completed, the microcontroller preferably waits 5 seconds (block 160)."). While Vonage argues the description of Figures 3A and 3B define what is meant by answering an incoming telephone call, Vonage does not request that other characteristics of the figures be included in the definition of the term. *See, e.g.*, Col. 6:14-24 ("As illustrated in Fig. 3, the TAD first determines if the user has pressed a key on the TAD (Decision Block 100). This is done by means of the microcontroller reading RS232 serial data port connected to the touch screen 5 through connection to determine if the screen has been touched. . .").

Moreover, Figure 3B includes a "DTMF DECODE ROUTINE 230", which is further described in Figure 5. And, as Vonage points out in its brief, Figure 5 uses the "present invention" language in describing Figure 5 as "illustrating a flow chart illustrating the DTMF decode routine of the present invention." However, at column 9, lines 51-54, the patent specification states that "[i]t is to be understood that any incoming signals over the telephone line with a voice message that is recognizable by the TAD and is generally unique to the caller may be used instead of DTMF tones." Thus, the patent specification is clear that DTMF tones need not be used, and accordingly, the DTMF decode routine of Figure 5, and as shown in Figure 3B, need not be used. Rather, other incoming signals may be used instead. The clear implication of the patent specification, taken as a whole and

7

not focusing strictly on the descriptions of the Figures, is that Figures 3A and 3B illustrate an embodiment of the invention, an embodiment in which DTMF tones, and a DTMF decode routine are used.

Vonage does not cite the Court to a case where the Federal Circuit has held that describing figures as "illustrating . . . the present invention" alone amounts to a clear intention to limit claim scope to a specific embodiment taught in the specification. *See Innova/Pure Water, Inc.*, 381 F.3d at 1117. It is worth noting that the terms "illustrating," "illustration," "illustrates," and "illustrated" are used throughout the patent. *See, e.g.*, Col. 3:42-43 ("Fig. 10 is an illustration of the display recalling information linked to one of the callers."); Col. 3:44-45 ("Fig. 11 is a flowchart illustrating a typical operation of the present invention."); Col. 3:65-66 (Fig. 1 illustrates the front perspective view of a telephone answering device (TAD) 25 according to the invention."); Col. 6:14 ("As illustrated in Fig. 3. . ."). Thus, the term "illustrating" would not seem to necessarily lead to the conclusion that claim scope is limited to the "illustrated" embodiments.

The specification does not teach that the specific embodiment described in the figures is somehow important or vital to what is claimed. Put another way, the specification does not teach that this embodiment is the only way to accomplish the answer mode of the invention. Indeed, as already pointed out, Vonage does not request that all features shown in Figures 3A and 3B be incorporated into "the invention" as claimed. If Figures 3A and 3B were considered as illustrating "the invention" instead of simply an embodiment, the Court would not be at liberty to pick and choose which aspects of Figures 3A and 3B to include and which to not include. And the specification does not provide guidance as to how such determinations might be made.

Vonage also asserts that during prosecution of the '576 patent, Klausner expressly

distinguished methods of automatically answering telephone calls with a "telephone answering device" from methods using a computer-based voice messaging system. *See* Ex. 2 to Vonage's Claim Constr. Br. at 12. The Court disagrees. The cited excerpt from the prosecution history shows the inventors arguing that there was no motivation or suggestion to combine a 1981 patent issued to Klausner and U.S. Patent No. 5,003,577 issued to Ertz. The Court does not find this portion of the prosecution history to disclaim computer based voice messaging systems, but rather to be addressing the examiner's conclusion that certain claims were obvious in light of the referenced prior art.

The Court is not persuaded that one skilled in the art would read the intrinsic evidence as containing explicit expressions of exclusion or restriction such that the answer mode of the invention was limited to the embodiment set forth in Figures 3A and 3B. *Cf. Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1342 (Fed. Cir. 2001) (noting that the common specification leads to the "inescapable conclusion" that patents had disclaimed a particular configuration). Further, the Court finds this phrase understandable to a juror in the context of the claims at issue and, therefore, does not require construction.

2.     "telephone answering device"

By the time of the hearing, Klausner proposed that this term be construed as "an electronic device for answering telephone calls," while Vonage proposed "a device for answering an incoming telephone call." Vonage does not appear to seriously dispute the inclusion of "electronic" in the definition of this term. Nor does there appear to be any serious dispute to including the word "incoming" in the definition as the preamble of Claim 3 describes "storing and retrieving information from the incoming telephone calls with a telephone answering device." Throughout the

9

'576 patent, the telephone answering device is described as a device that can receive, store and retrieve messages left by a calling party, *i.e.*, messages coming in to a called party. *See, e.g.,* '576 patent, col. 5:23-31, 34-40. Accordingly, the Court construes this term as "an electronic device for answering an incoming telephone call."

3.      "coupled to a telephone"

Klausner proposes "connected to a telephone so that signals are transferred from one to the other," while Vonage proposes "connected to the called party's telephone line." The primary dispute here is whether the telephone access device ("TAD") is connected to the "called party's telephone line." Vonage argues that the TAD must be connected to the "called party's telephone line" because the specification limits the invention to the answer mode described in Figures 3A and 3B. For the reasons discussed above, the Court rejects this argument. In light of the preamble's description of the method as one of "automatically answering incoming telephone calls and storing and retrieving information from the incoming telephone calls," the Court finds Klausner's proposal to be deficient as well. The patent specification simply describes the telephone answering device as being connected to the telephone line that receives an incoming call. '576 patent, col. 5:41-44. Accordingly, the Court construes this term as "connected to a telephone receiving an incoming call."

4.      "first signals"

Klausner contends that the term needs no construction. Vonage proposes "signals received with a voice message recognizable by the telephone answering device and generally unique to the caller." To support its proposal, Vonage cites to a portion of the specification that provides "[i]t is to be understood that any incoming signals over the telephone line with a voice message that is recognizable by the TAD and is generally unique to the caller may be used instead of DTMF tones."

*See* Col. 9:51-54.

The claim language itself describes the "first signals" as "specifying each caller of each incoming call." *See* Col. 13:47-48. The Court fails to see how the portion of the specification cited by Vonage does anything more than clarify that signals other than "DTMF tones" may be used to specify the caller. To hold that this statement constitutes the exclusive definition of the term would seem to clearly import unnecessary limitations into the claim language. *See Phillips*, 415 F.3d at 1323. Moreover, the proposed limitations, "recognizable by the telephone answering device" and "generally unique to the caller," are ambiguous and could inject confusion into the construction.

The Court notes that in the prosecution history of the '236 patent[4], the Applicant describes "signal" as a "[g]eneral term referring to a conveyor of information." *See* Ex. 12 to Klausner's Claim Constr. Br. at 7. Also, the Applicant refers to "caller identity information," "identifying information" and "caller identifying information." *See* Ex. 6 to Klausner Opening Br., p. 21, and Ex. 7 to Klausner Opening Br., p. 20.

The Court finds that the meaning of "first signals" in the context of the patent is "information."

5.    "corresponding voice message"

Klausner proposes no construction, while Vonage urges "the voice message received by the telephone answering device with the first signal." The Court finds that a construction is necessary to avoid potential confusion as to what the voice message corresponds to. The patent specification describes the telephone answering device receiving voice messages and DTMF tones during a call and linking them together. *See, e.g.,* '576 patent, col. 7:19-51. Thus, the Court adopts Vonage's

---

[4]The '576 patent is a continuation of the application that resulted in the '236 patent.

11

proposal and construes this term to mean "the voice message received by the telephone answering device with the first signal."

6.    "user remote access device"

Klausner proposes "a device that can from any remote location gain authenticated access to internal system resources from outside the system that does not require separate data and voice channels to communicate with the telephone answering device." Vonage proposes "the user remote access device having the structure specified in Claim 1." In support of its proposal, Vonage contends that "user remote access device" is not discussed in the written description[5] but is expressly defined only in terms of means-plus-function elements in Claim 1. Vonage argues that because there is a presumption that the same terms appearing in different claims have the same meanings, the term "user remote access device" should be defined in all claims as it is in Claim 1. Vonage's argument is without merit.

Vonage's argument hinges on the idea that a "user remote access device" is different from a "remote access device." See *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("in the absence of any evidence to the contrary, we must presume that the use of . . . different terms in the claims connotes different meanings"). Although different terms in a patent are presumed to have different meanings, that presumption is overcome in this case. Claim 2, which depends from Claim 1, references the "user remote access device" of Claim 1 by calling it a "remote access device." Moreover, independent Claims 5 and 20 use the terms "remote access device" and "user remote access device" interchangeably within the same claim. Thus, Vonage's proposed construction would have the effect of importing the limitations of Claim 1 into all claims

---

[5]The term "remote access device" is discussed but not "user remote access device."

when claims 2 and 5-13 include a "remote access device" that contains different elements.

Vonage also argues that the prosecution history shows that Claim 1 defines this term because the inventors amended Claim 1 to clarify that a "user remote access device" includes the means-plus-function elements in part (b) of Claim 1. As noted by Klausner, however, the examiner expressed concern with the term "system independent user remote access device." ("Regarding claim 15 [current Claim 1], it is not clear if a 'user remote access device (line 11)' and "a system-independent remote access device (line 15) are the same."). Ex. 27 to Klausner's Reply Br. at 4. In response, the inventors removed "system independent" to "make the claim language consistent." Ex. 7 to Klausner's Claim Constr. Br. at 20. The Court cannot conclude that such an amendment reflects an intention to define the "user remote access device" of Claim 3 in terms of the means-plus-function limitations of Claim 1.

Finally, contrary to Vonage's contention, Claim 1 is not *defining* a "user remote access device" or a "remote access device." Instead, the claim sets forth elements included in the "user remote access device" for purposes of that claim. A claim's elements establish the boundaries of that claim, *Innova*, 381 F.3d at 1115, rather than define a particular claim term. Indeed, Claims 2 and 5-13 set forth different elements of a "remote access device" but none of these claims purport to define the term. Vonage does not cite to any authority holding that means-plus-function elements in an independent claim can be used to define a term appearing in another independent claim.[6] "There is a rebuttable presumption that different claims are of different scope." *Amgen, Inc. v.*

---

[6]The Court finds this situation distinguishable from the case cited by Vonage, *PODS, Inc. v. Porta Store, Inc.*, 484 F.3d 1359 (Fed. Cir. 2007). In that case, the parties agreed on the definition of "carrier frame" in Claim 1 and there was no reason to fail to apply that definition to the term as used in another claim. Here, the parties have not agreed on a definition for "user access remote device" and Vonage is attempting to restrict the meaning of a term by way of an independent claim's means-plus-function elements, not by way of some sort of definition.

*Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1326 (Fed. Cir. 2003). Vonage has not rebutted this presumption here.

The construction proposed by Klausner suffers from its own deficiencies. Klausner proposes "a device that can from any remote location gain authenticated access to internal system resources from outside the system and that does not require separate data and voice channels to communicate with the telephone answering device." Klausner points principally to the prosecution history to support various aspects of its proposed construction. However, the Court does not find adequate support for certain aspects of Klausner's proposal. Klausner refers to an Amendment, dated April 3, 1995, in which the Applicant distinguishes a prior art reference to Jachmann. In his argument, the Applicant said that "Jachmann does not disclose a flexible and system-independent remote device that may be used from any remote location to access any TAD wherein visual messages are displayed on the system-independent remote device." *See* Ex. 6 to Klausner Opening Br., p. 28. But, in this particular argument, the Applicant actually relied on two specific differences to distinguish Jachmann; namely the "system-independent" remote device, and the fact that, in Jachmann, "remote retrieval of information must be accomplished without use of any visual messages." *Id.* The "system-independent" aspect of the claims at issue was deleted in a subsequent Amendment.

Klausner points to its expert Levine as support for that portion of its proposal reciting "from any remote location gain authenticated access to internal system resources from outside the system." However, Klausner points to nothing specific in the intrinsic record to support these restrictions, other than the notion that access to voice messages is typically intended to be limited or controlled. The reference to "internal system resources" does not aid in the understanding of the subject claim term, at least in the context of the asserted claims of the '576 patent. Those claims do not expressly

14

recite a "system," nor is a "system" implicitly required. Hence, inclusion of a requirement of "authenticated access to internal system resources from outside the system" interjects limitations not reasonably connected to any other claim requirement and will likely only cause confusion to a lay jury. Certainly the word "remote" carries with it the connotation that some distance, and perhaps a considerable distance, may exist between the remote access device and the telephone answering device. Dr. Levine, Klausner's expert, describes that distance as "any distant location" and having "no range limit on access." Levine Decl. ¶ 51. Klausner's proposed language of "from any remote location" adequately describes this limitation.

Finally, Klausner proposes that the term "remote access device" be construed to require that the device "does not require separate data and voice channels to communicate with the telephone answering device." Klausner points to an Amendment dated November 10, 1995, in which the Applicant again distinguished the Jachmann reference. Klausner points to the Applicant's statement that "in the preferred embodiment of Jachmann, two separate data paths are required for retrieving voice messages." Therefore, argues Klausner, the "remote access device" of the claims must not require two separate channels. However, in the November 10, 1995 Amendment, the Applicant went on to acknowledge that a second embodiment shown by Jachmann "arguably uses only a telephone link to convey both voice and data information." *See* Ex. 7 to Klausner Opening Br., pp. 24-25. But, said the Applicant, in that second embodiment of Jachmann, the user may be restricted in his use of the single telephone link to only certain times of the day. Thus, the Applicant argued that the distinction between the claimed invention and the disclosure of Jachmann lie in the fact that, in the claimed invention, the "first signals are available upon user demand." *Id.* The prosecution history is insufficient to show that the Applicant surrendered claim scope regarding the number of channels

15

required for transmission of voice and data. *See Sorenson v. Int'l Trade Comm'n*, 427 F.3d 1375, 1378 (Fed. Cir. 2005) ("in order to disavow claim scope, a patent applicant must clearly and unambiguously express surrender of subject matter during prosecution").

For the reasons expressed above, the Court construes the terms "user remote access device" and "remote access device" identically to mean "a device that can gain access to voice messages stored on the telephone answering device from a remote location."

7.    "transmitting said received first signals to a user remote access device"

Klausner advocates no construction, while Vonages proposes "the telephone answering device outputs the first signals over a single telephone link to a user remote access device." Vonage contends that the prosecution history shows that the first signals must be transmitted over a single telephone link. The Court disagrees.

The prosecution history excerpt cited by Vonage demonstrates that first signals *may* be transmitted over a single telephone link. *See* Ex. 3 to Def.'s Claim Constr. Br. at 24-25 ("the presently claimed invention may use a single telephone link for conveying both voice and data information"and "the presently claimed invention places no limitation whatsoever on when a user may retrieve messages using a single telephone link"). *See also* the above discussion of these passages from the prosecution history. Further, the prosecution history provides that "signals may be transmitted through any medium, including but not limited to, DTMF tones over a telephone line, radio waves, etc." *See* Ex. 8 to Klausner's Claim Constr. Br. at 11-12. Thus, the Court declines to adopt Vonage's proposal and finds this phrase needs no construction apart from the constructions of "first signals" and "user remote access device" already given.

16

8.    "transmitting to a user remote access device at least one specific voice message linked to a
      specific one of said received first signals"

Klausner argues this term needs no construction apart from the construction of "user remote

access device." Vonage proposes "the telephone answering device plays back the voice message to

the user remote access device over the single telephone link between the telephone answering device

and user remote access device."

Among other things, Vonage proposes that this phrase requires "play back" by the telephone

answering device. While "play back" of a voice message may be one action taken to accomplish the

transmission of the voice message, the concept of "play back" does not appear to be inherent in the

word "transmitting," nor does Vonage point to anything in the intrinsic record, aside from a specific

embodiment described in the specification, suggesting otherwise. The Court declines to incorporate

details of a disclosed embodiment into a claim term in the absence of clear direction otherwise from

the intrinsic record. *See, e.g., Varco, L.P. v. Pason Sys. USA, Corp.*, 436 F.3d 1368, 1373 (Fed. Cir.

2006) ("In examining the specification for proper context . . . this court will not at any time import

limitations from the specification into the claims."). Vonage also argues the requirement of using

a "single telephone link" between the telephone answering device" and the "user remote access

device." That argument has been addressed above.

For these reasons as well as those discussed in the previous section, the Court rejects

Vonage's proposed construction and finds that this phrase needs no construction.

**Conclusion**

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in a table attached to this opinion.

**So ORDERED and SIGNED this 7th day of August, 2007.**

_____

JOHN D. LOVE

UNITED STATES MAGISTRATE JUDGE

18

# Rule 4.5(d) – Comparative Claim Chart for US Patent 5,572,576

| Claim Language | Klausner's Proposed Claim Construction | Vonage's Proposed Claim Construction | Court's Construction |
|---|---|---|---|
| **Claim 3** | | | |
| [preamble] "A method of **automatically answering incoming telephone calls and storing and retrieving information from the incoming telephone calls with a telephone answering device having a memory and being coupled to a telephone**" | | *"automatically answering incoming telephone calls"* means sensing an incoming ring signal on the called party's telephone line and putting the called party's telephone line in an off-hook state | No construction necessary. |
| | *"telephone answering device"* means "an electronic device for answering telephone calls" | *"telephone answering device"* means a device for answering an incoming telephone call | *"telephone answering device"* means "an electronic device for answering an incoming telephone call" |
| | *"coupled to a telephone"* means "connected to a telephone so that signals are transferred from one to the other" | *"coupled to a telephone"* means connected to the called party's telephone line | *"coupled to a telephone"* means "connected to a telephone receiving an incoming call" |
| 3[a] "**receiving first signals specifying each caller of each incoming call**" | *"each incoming call"* means "every one of the answered incoming calls to which the method of Claim 3 applies" | No construction is necessary | |
| | | *"first signals"* means signals received with a voice message recognizable by the telephone answering device and generally unique to the caller" | *"first signals"* means "information" |
| 3[b] "**receiving** a voice message from each caller and storing each said voice message as a stored voice message in said memory" | No construction is necessary | No construction is necessary | No construction is necessary. |
| 3[c] "linking each of said received first signals with a **corresponding voice message**" | No construction is necessary | *"corresponding voice message"* means the voice message received by the telephone answering device with the first signal | *"corresponding voice message"* means "the voice message received by the telephone answering device with the first signal" |

1

# Rule 4.5(d) – Comparative Claim Chart for US Patent 5,572,576

| | | | |
|---|---|---|---|
| 3[d] "transmitting said received first signals to a user remote access device such that said signals are available upon user demand for assisting in the selective retrieval of at least one of said stored voice messages using displayed first signals" | *"remote access device"* means *"a device that can from any remote location gain authenticated access to internal system resources from outside the system that does not require separate data and voice channels to communicate with the telephone answering device"* | *"user remote access device"* means the user remote access device having the structure specified in Claim 1 | **"user remote access device"** means **"a device that can gain access to voice messages stored on the telephone answering device from a remote location"** |
| | | *"transmitting said received first signals to a user remote access device"* means the telephone answering device outputs the first signals over a single telephone link to a user remote access device | No construction necessary. |
| 3[e] "transmitting to a user remote access device at least one specific voice message linked to a specific one of said received first signals in response to selection of said at least one of said stored voice messages" | *"remote access device"* means *"a device that can from any remote location gain authenticated access to internal system resources from outside the system that does not require separate data and voice channels to communicate with the telephone answering device"* | *"transmitting to a user remote access device at least one specific voice message linked to a specific one of said received first signals"* means the telephone answering device plays back the voice message to the user remote access device over the single telephone link between the telephone answering device and user remote access device | No construction necessary. |
| | *"remote access device"* means *"a device that can from any remote location gain authenticated access to internal system resources from outside the system that does not require separate data and voice channels to communicate with the telephone answering device"* | *"user remote access device"* see the construction provided in 3[d] | **"user remote access device"** means **"a device that can gain access to voice messages stored on the telephone answering device from a remote location"** |

## Rule 4.5(d) – Comparative Claim Chart for US Patent 5,572,576

| Claim 4 | | | |
|---|---|---|---|
| 4[a] "receiving at said **user remote access device** said **first signals** specifying the caller of each **incoming call**, said **first signals** being transmitted from said **telephone answering device** to said **user remote access device**" | "**each incoming call**" means "every one of the answered incoming calls to which the method of Claim 3 applies"<br><br>"**remote access device**" means "a device that can from any remote location gain authenticated access to internal system resources from outside the system that does not require separate data and voice channels to communicate with the telephone answering device"<br><br>"**telephone answering device**" means "an electronic device for answering telephone calls" | No construction is necessary<br><br>"*user remote access device.*" see the construction provided in 3[d]<br><br>"*telephone answering device.*" see the construction provided in Claim 3 [preamble]<br><br>"*first signals.*" see the construction provided in 3[a] | "**user remote access device**" means "a device that can gain access to voice messages stored on the telephone answering device from a remote location"<br><br>"**telephone answering device**" means "an electronic device for answering an incoming telephone call."<br><br>"**first signals**" means "information" |
| 4[b] "displaying at said **user remote access device** caller identities related to said **first signals**, said caller identities being associated with said stored voice messages for user selection of at least one of said caller identities" | "**remote access device**" means "a device that can from any remote location gain authenticated access to internal system resources from outside the system that does not require separate data and voice channels to communicate with the telephone answering device" | "*user remote access device.*" see the construction provided in 3[d]<br><br>"*first signals.*" see the construction provided in 3[a] | "**user remote access device**" means "a device that can gain access to voice messages stored on the telephone answering device from a remote location"<br><br>"**first signals**" means "information" |

3]

**Rule 4.5(d) - Comparative Claim Chart for US Patent 5,572,576**

| | | | |
|---|---|---|---|
| 4[c] "controlling said telephone answering device by transmitting a second signal from said **user remote access device** to said **telephone answering device** to cause said telephone answering device to play back a selected stored voice message" | *"remote access device"* means "a device that can from any remote location gain authenticated access to internal system resources from outside the system that does not require separate data and voice channels to communicate with the telephone answering device" | *"user remote access device"* see the construction provided in 3[d] | *"user remote access device"* means "a device that can gain access to voice messages stored on the telephone answering device from a remote location" |
| | *"telephone answering device"* means "an electronic device for answering telephone calls" | *"telephone answering device"* see the construction provided in Claim 3 [preamble] | *"telephone answering device"* means "an electronic device for answering an incoming telephone call. |

# Rule 4.5(d) - Comparative Claim Chart for US Patent 5,572,576

| Claim 1 | | |
|---|---|---|
| (b) a user remote access device, which comprises:<br><br>**means for receiving said first signals from said telephone answering device such that said first signals are available upon user demand** | Plaintiff is not asserting Claim 1 in this litigation and does not believe that any of the terms in Claim 1 need to be construed. | Function: *receiving said first signals from said telephone answering device;*<br><br>Proposed Structure(s):<br><br>microprocessor, EPROM, telephone coupler (acoustic, inductive or electrical), telephone link and telephone receiver |
| **means for providing caller identities related to said first signals;** | Plaintiff is not asserting Claim 1 in this litigation and does not believe that any of the terms in Claim 1 need to be construed. | Function: *providing caller identities related to said first signals;*<br><br>Proposed Structure(s):<br><br>microprocessor, EPROM, and internal database |
| **means for displaying caller identities associated with said stored voice messages** | Plaintiff is not asserting Claim 1 in this litigation and does not believe that any of the terms in Claim 1 need to be construed. | Function: *displaying caller identities associated with said stored voice messages*<br><br>Proposed Structure(s):<br><br>display and display controller circuit |